Filed/Docketed
Aug 16, 2011

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| PURDY, JIMMIE L., JR., ) | Case No. 10-10275-R |
| ) | Chapter 7 |
| Debtor. ) | |

| | |
|---|---|
| TRACY A. CINOCCA, P.C., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| JIMMIE L. PURDY, JR., ) | Adv. No. 10-01097-R |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

On July 21, 2011, the Court held a trial on the merits on the claim of Plaintiff Tracy A. Cinocca, P.C. ("Cinocca") that the Chapter 7 discharge obtained by Defendant/Debtor Jimmie L. Purdy, Jr. ("Purdy") should be revoked under 11 U.S.C. § 727(d)(1) and/or (d)(2). Cinocca appeared through its counsel, Tracy A. Cinocca. Purdy appeared in person and by and through his counsel, Matthew Riggin. After Cinocca fully presented its case-in-chief and rested, Purdy moved for dismissal, which the Court construed as a motion for judgment on partial findings under Rule 52(c) of the Federal Rules of Civil Procedure, made applicable herein by Bankruptcy Rule 7052 ("Rule 52(c) Motion").

After carefully considering the pleadings filed in this adversary proceeding and in Purdy's main bankruptcy case, the pre-trial order, the testimony elicited, the documents admitted, the legal arguments of counsel, and applicable law, the Court granted Purdy's Rule

52(c) Motion. The Court further advised that it would issue written findings of fact and conclusions of law, and a judgment in favor of Purdy.

## I.    Jurisdiction

The Court has jurisdiction of this core proceeding by virtue of 28 U.S.C. §§ 1334, 157(a) and 157(b)(2)(J), and Local Civil Rule 84.1(a) of the United States District Court for the Northern District of Oklahoma.

## II.    Procedural History

In 2007, Cinocca, a law firm, represented Greathouse Funding Corporation, an entity wholly owned by Purdy that did business using the trade name The Mortgage Doctor. Greathouse Funding Corporation sued a former employee who opened a competing mortgage brokerage business using what Purdy believed was information proprietary to Greathouse Funding Corporation (the "Former Employee Litigation"). In 2008, Cinocca sued Greathouse Funding Corporation and Purdy for unpaid attorney fees related to that litigation, and obtained a default judgment in the approximate amount of $83,000.

On February 8, 2010, Purdy filed his petition seeking relief under Chapter 7 of the Bankruptcy Code. On July 13, 2010, Purdy was granted a discharge of all dischargeable debts pursuant to 11 U.S.C. § 727. On September 11, 2010, Cinocca filed a Complaint seeking, among other things,[1] revocation of Purdy's discharge pursuant to 11 U.S.C. §§ 727(d)(1) and (d)(2). Sections 727(d)(1) and (d)(2) provide –

---

[1] Cinocca's claims under 11 U.S.C. § 727(a), (c), and (d)(3), and its request for damages, were dismissed on December 29, 2010 (Adv. Doc. 15).

>On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—
>
>>(1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge; [or]
>
>>(2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee[.][2]

In connection with its § 727(d)(1) claim, Cinocca alleged that Purdy obtained his discharge fraudulently by failing to fully disclose certain business interests to the trustee. Specifically, Cinocca claimed that Purdy operated two businesses known as Greathouse Credit Services, one as a corporation and one as a limited liability company, and that he disclosed only the limited liability company in his statement of financial affairs ("SOFA"). Cinocca also asserted that Purdy failed to disclose the trade name "Mortgage Doctor," its phone number, and its training manual on his Schedule B. In addition, Cinocca alleged that Purdy failed to disclose a lease agreement on his Schedule G and co-debtors on his Schedule H.

In connection with the § 727(d)(2) claim, Cinocca claimed that Purdy continued to use the trade name "Mortgage Doctor" and its phone number to earn income post-petition, and that he should have turned over the name and phone number to the trustee. Although Purdy disclosed that on the petition date that he was employed by Community First Bank, and used the trade name and phone number in connection with his employment, Cinocca believed that

---

[2]11 U.S.C. §§ 727(d)(1) and (d)(2).

the bank did not exist, and therefore contended that income earned by Purdy by using the Mortgage Doctor name and phone number should have been turned over to the trustee.

### III.     Rule 52(c)[3] Standard

Under Rule 52(c), in a bench trial, "[w]hen a party has finished presenting evidence and that evidence is deemed by the trier insufficient to sustain the party's position, the court need not waste time, but, rather, may call a halt to the proceedings and enter judgment accordingly."[4]  "In considering whether to grant judgment under Rule 52(c), the [trial] court applies the same standard of proof and weighs the evidence as it would at the conclusion of the trial.  Accordingly, the court does not view the evidence through a particular lens or draw inferences favorable to either party.  The [trial] court should also make determinations of witness credibility where appropriate.  Finally, if the court enters judgment under Rule 52(c), it must make findings of fact and conclusions of law pursuant to Rule 52(a)."[5]

### IV.     Findings of Fact

#### A.     Alleged failure to disclose interest in Greathouse Credit Services, Inc.

Greathouse Credit Services, Inc. is a not-for-profit corporation that was incorporated on March 27, 2006, to provide debtor education services.[6]  Purdy was elected by the

---

[3] Fed. R. Civ. P. 52(c), made applicable herein by Bankruptcy Rule 7052.

[4] Morales Feliciano v. Rullan, 378 F.3d 42, 59 (1st Cir. 2004).

[5] EBC, Inc. v. Clark Bldg. Systems, Inc., 618 F.3d 253, 272-73 (3d Cir. 2010) (citations omitted).

[6] See Plaintiff's Exhibits 3 and 4.

4

incorporators to serve as the "trustee or director" of Greathouse Credit Services, Inc.[7] Greathouse Credit Services, Inc. was still in good standing with the state as of July 16, 2011.[8] In paragraph 18 of his SOFA, Purdy disclosed that he had some type of relationship with Greathouse Credit Services, *LLC*, which began on March 24, 2006, and ended in June of 2008.[9] He did not disclose any relationship with Greathouse Credit Services, *Inc.*

At trial, Cinocca asked Purdy why he failed to disclose his interest in Greathouse Credit Services, *Inc.* on his Schedule B and his SOFA. Purdy testified that there had been only one entity doing business as Greathouse Credit Services, which may have been a corporation at one point in time and a limited liability company at another point, or he may have been mistaken about the type of entity it was when he disclosed it on the SOFA. The Court believes Purdy's testimony, and finds that only one entity did business as Greathouse Credit Services, and that Purdy adequately disclosed the entity in his SOFA.

---

[7] See Plaintiff's Exhibit 4.

[8] See Plaintiff's Exhibit 2.

[9] Paragraph 18 of the SOFA instructs an individual debtor to –

> [L]ist the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor, or was self-employed in a trade, profession, or other activity either full- or part-time with six years immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within six years immediately preceding the commencement of this case.

Paragraph 18 does not require the debtor to indicate the specific nature of the debtor's relationship to the business or entity.

Moreover, because Greathouse Credit Services was a not-for-profit entity, it did not issue stock.[10] While Purdy had been a director and/or trustee, and had managed its operations, he did not own any interest in the entity doing business as Greathouse Credit Services, and thus was not required to report it as an asset on his Schedule B. To the extent that he misstated the nature of the entity on his SOFA, the Court finds and concludes that the misstatement was not made with any intent to defraud creditors, the trustee, or the Court.

B. <u>Alleged failure to disclose the Lease Agreement on Schedule G</u>

In May 2009, Purdy signed a one year retail lease agreement (the "Lease Agreement") on behalf of Greathouse Credit Services, LLC,[11] as lessee of 630 square feet of office space.[12] The Lease Agreement obligated Greathouse Credit Services, LLC, to pay the lessor, 81st & Memorial, LLC, rent in the amount of $700 per month for the period of June 1, 2009, to May 31, 2010. Purdy testified that the office was immediately subleased by his employer, Community First Bank. Community First Bank eventually opened a branch in that office space. Purdy was employed there as bank branch manager or office manager, which he disclosed in his Schedule I and at the meeting of creditors held on March 8, 2010.

---

[10] Its Articles of Incorporation provide that "[t]his corporation is not-for-profit, and as such does not afford pecuniary gain, incidentally or otherwise, to its members, trustees, officers, or other private persons . . . . Upon the dissolution of the corporation, assets shall be distributed for one or more exempt purposes within the meaning of section 501(c)(3) of the Internal Revenue Code," or to a federal, state or local government for a public purpose. Articles of Incorporation, Plaintiff's Exhibit 4, at ¶¶ 6 and 7.

[11] Again, it does not appear that Greathouse Credit Services, LLC, ever existed, and that Purdy was confused as to the legal entity under which Greathouse Credit Services operated.

[12] <u>See</u> Plaintiff's Exhibit 1.

6

Apparently, Community First Bank vacated the premises upon expiration of the lease on May 31, 2010.[13]

Because Purdy individually was not a party to the Lease Agreement, the Court finds that Purdy had no obligation to disclose the Lease Agreement on his Schedule G.[14]

### C. Alleged failure to disclose certain intangible assets of The Mortgage Doctor on Schedule B

In his Voluntary Petition, Purdy disclosed, in the box requesting "All Other Names used by the Debtor in the last 8 years," that he formerly did business as "Greathouse Funding Corporation d/b/a The Mortgage Doctor." The evidence established that in 2000, Purdy registered "The Mortgage Doctor" as the trade name of his mortgage brokerage business, which he operated as a sole proprietor.[15] At some point, Purdy transferred the trade name to Greathouse Funding Corporation, a company wholly-owned by Purdy. No evidence was elicited concerning any further transfer of the trade name–to Purdy or to anyone else. Apparently, however, the trade name became available after Greathouse Funding

---

[13]Ms. Cinocca testified that she became suspicious of Purdy's disclosures on June 23, 2010, when she drove by the address of the Community First Bank that Purdy disclosed on his schedules, and the bank was not there.

[14]Although the Lease Agreement recites that Greathouse Credit Services, LLC, was the lessee, the signature block on the lease does not indicate that Purdy signed as an authorized agent of that entity. Cinocca contends that this discrepancy rendered Purdy personally liable on the Lease Agreement. Even if that were true, however, Purdy testified that his intent was to render the entity liable on the lease, and not himself, and in any event, the property was immediately subleased to Community First Bank, and the bank paid the rent. Thus, Purdy did not consider himself a party to the Lease Agreement when he completed his schedules. The Court credits this testimony, and finds that Purdy lacked intent to conceal the Lease Agreement from the trustee or creditors.

[15]See Plaintiff's Exhibit 7.

Corporation ceased operations, because on June 19, 2010, four months *after* Purdy filed his bankruptcy petition, he was able to obtain a 60 day reservation of the name "The Mortgage Doctor" from the Secretary of State.[16] He subsequently reserved the name for 60 day periods on October 4, 2010, March 2, 2011, and July 5, 2011.[17] The Court finds that on the petition date, the trade name was either still owned by Greathouse Funding Corporation, or it was publicly available.

Purdy used the name "The Mortgage Doctor" for some purposes in 2009. For example, the Lease Agreement included an exhibit disclosing proposed signage that would have indicated that the space was to be occupied by "The Mortgage Doctor, a division of Community First Bank Loan Services."[18] Community First Bank prohibited Purdy from representing that The Mortgage Doctor was a division of Community First Bank, however, and the office was identified as Community First Bank Loan Services on the signage that was ultimately posted on the building.[19]

At the meeting of creditors held on March 8, 2010, the trustee and a creditor questioned Purdy about the disposition of the assets of Greathouse Funding Corporation dba The Mortgage Doctor after it ceased doing business in 2008.[20] Purdy testified that he sold

---

[16] See Plaintiff's Exhibit 16.

[17] See Plaintiff's Exhibits 17-19.

[18] Exhibit C of the Lease Agreement, Plaintiff's Exhibit 1.

[19] See Defendant's Exhibit 3.

[20] Transcript of Meeting of Creditors, Plaintiff's Exhibit 39, at 15-17.

the hard assets and used the proceeds for personal living expenses.[21] When asked whether he sold the phone number used by The Mortgage Doctor, he disclosed that he was using it as the phone number of Community First Bank where he was employed, that doing so was a condition of his employment, that he owned and controlled the phone number by virtue of owning all the stock in Greathouse Funding Corporation, and that the bank was not compensating him or Greathouse Funding Corporation for the use of the phone number.[22] The Court finds that Purdy did not conceal his use of The Mortgage Doctor name and phone number, and that Cinocca and the trustee had knowledge thereof prior to the entry of Purdy's discharge.

Moreover, Cinocca was apparently of the opinion that The Mortgage Doctor trade name and phone number were not property of Purdy personally, and thus did not become property of the bankruptcy estate. In a letter dated August 9, 2010, in which Cinocca proposed that Purdy reaffirm a portion of the attorney fee judgment, Cinocca requested that Purdy "secure" the proposed reaffirmed debt with "my [Cinocca's] ownership of the Mortgage Doctor phone number and trade name."[23] In addition, Cinocca stated that transfer of the trade name and phone number to it as payment of a portion of the judgment was appropriate because Cinocca "consider[ed] the trade name and phone numbers of Greathouse Funding to still have value, as does Mr. Purdy since he has continued to operate using

---

[21]Id. at 16.

[22]Id. at 17, 22-23.

[23]Defendant's Exhibit 13.

9

them."[24]  If these intangibles were assets of the bankruptcy estate, as Cinocca now claims, Purdy could not have transferred them to Cinocca in partial settlement of her claim, as exclusive authority to dispose of property of the estate rested with the trustee.

In summary, the Court finds that Cinocca did not establish that The Mortgage Doctor trade name and phone number were concealed assets of Purdy's estate, and further finds that to the extent Purdy had any interest in these intangible assets, he disclosed his use of the assets to the trustee and to interested creditors, including Cinocca, on March 8, 2010, well prior to entry of discharge.  Accordingly, to the extent Cinocca alleges that Purdy's non-disclosure of the same on his bankruptcy schedules constituted fraud, the Court finds that Cinocca knew the relevant facts prior to the entry of Purdy's discharge.

       D.      <u>Alleged failure to disclose the training manual</u>

Cinocca spent considerable time attempting to establish that the training manual developed by Greathouse Funding Corporation dba The Mortgage Doctor was a valuable asset that Purdy failed to disclose on his Schedule B.  Cinocca attempted to prove its value by referring to Purdy's testimony about the manual in the Former Employee Litigation.  In that litigation, the plaintiff, Greathouse Funding Corporation (and not Purdy individually), sought to be compensated for the value of the proprietary training manual allegedly stolen by the former employee.  The training manual was developed prior to 2005, and Greathouse Funding Corporation dba The Mortgage Doctor ceased operating in 2008.[25]

---

[24]<u>Id</u>.

[25]Initially, Cinocca also contended that Purdy failed to disclose a "lending matrix" that was used by employees of Greathouse Funding Corporation dba The Mortgage Doctor in brokering home loans.  Because none of the lenders that had been listed on the

The Court finds that the 2005 training manual was property of Greathouse Funding Corporation, and in any event, was likely obsolete and worthless. Further, Purdy did not even possess a copy of the training manual on the petition date. Moreover, because Cinocca was trial counsel in the Former Employee Litigation, and had a copy of the training manual, Cinocca was aware of the training manual and its absence from the schedules prior to the entry of discharge.

Accordingly, the Court finds that Cinocca failed to establish that Greathouse Funding Corporation's training manual was an asset of the estate, and thus Purdy had no obligation to disclose it on his Schedule B, and in any event, Cinocca was aware of the alleged non-disclosure prior to the discharge.

E.      Failure to list co-debtors on Schedule H

The majority of the debts listed on Purdy's schedules were debts related to Greathouse Funding Corporation's operations. At the meeting of creditors, Purdy testified that he was solely liable on some listed debts, jointly liable with Greathouse Funding Corporation on others, and in some cases, only Greathouse Funding Corporation was liable. At the meeting of creditors held on March 8, 2010, Purdy and his counsel advised the trustee that all debts related to Greathouse Funding Corporation were listed in an abundance of caution because they were unsure which of the corporation's debts had been guaranteed by Purdy.[26] Purdy did not mark the co-debtor box in connection with any debts on his schedules, nor did he list Greathouse Funding Corporation as a co-debtor on Schedule H.

---

matrix were still in existence, Cinocca conceded that the lender matrix had no value.

[26]Transcript of Meeting of Creditors, Plaintiff's Exhibit 39, at 7-9.

11

Greathouse Funding Corporation was wholly owned by Purdy and it ceased doing business in 2008. To the extent that Greathouse Funding Corporation was entitled to notice of the bankruptcy as a co-debtor, it had notice because Purdy was its sole shareholder. The Court finds and concludes that failing to disclose which debts were owed jointly with Greathouse Funding Corporation was not a material omission, and was not made with the intent to defraud creditors, the trustee, the co-debtor, or the Court, and that there is no evidence that anyone was mislead to their detriment by the omission.

    F.    <u>Alleged failure to turn over assets to the trustee</u>

Purdy earned a salary while he was employed by Community First Bank.[27] His post-petition earnings were not property of the bankruptcy estate. Cinocca failed to identify any asset that Purdy acquired or was entitled to acquire post-petition that was property of the estate and should have been reported to or turned over to the trustee.

**V.    Conclusions of Law**

Cinocca bears the burden of proving by a preponderance of the evidence each element of her revocation of discharge claims.[28] Revocation is warranted under very limited circumstances, and is considered "an extraordinary remedy."[29]

---

[27] <u>Id</u>. at 18.

[28] <u>See</u> <u>First Nat'l Bank of Gordon v. Serafini (In re Serafini)</u>, 938 F.2d 1156, 1157 (10th Cir. 1991) (preponderance of evidence standard applies to fraud claims under §§ 523 and 727); <u>Mazer v. Jones (In re Jones)</u>, 178 B.R. 1, 3 (Bankr. D. N.M. 1995) (preponderance of the evidence standard applies to revocation of discharge claims).

[29] <u>Bowman v. Belt Valley Bank (In re Bowman)</u>, 173 B.R. 922, 924 (B.A.P. 9th Cir. 1994); <u>Tighe v. Valencia (In re Guadarrama)</u>, 284 B.R. 463, 469 (C.D. Cal. 2002).

A. <u>Section 727(d)(1)</u>

Section 727(d)(1) provides–

> On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—
>
>> (1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge.[30]

"To revoke a discharge under § 727(d), the debtor must have committed a fraud in fact which would have barred the discharge had the fraud been known. Such fraud must be discovered after discharge to effectuate revocation under § 727(d)."[31] Any false statements or omissions relied upon by creditors and the trustee in failing to timely object to the discharge under § 727(a) must have been made by the debtor with the specific intent to obtain the discharge by wrongful means.[32]

Based upon the factual findings stated above, the Court concludes that Cinocca failed to prove by a preponderance of evidence that Purdy committed fraud in fact that would have barred the discharge. Moreover, the evidence upon which Cinocca relied in an attempt to establish fraud was known by Cinocca prior to the entry of the discharge. Accordingly, Purdy is entitled to judgment in his favor on the § 727(d)(1) claim.

---

[30] 11 U.S.C. § 727(d)(1).

[31] <u>Lawrence Nat'l Bank v. Edmonds (In re Edmonds)</u>, 924 F.2d 176, 180 (10th Cir. 1991) (citations omitted). <u>See also</u> <u>Jones</u>, 178 B.R. at 3-4.

[32] <u>See</u> <u>Jones</u>, 178 B.R. at 3-4 (false statements or omissions made by mistake or ignorance do not establish an intent to defraud).

B.  Section 727(d)(2)

To warrant revocation of the discharge under 11 U.S.C. § 727(d)(2), Cinocca must prove that Purdy acquired property of the estate or became entitled to acquire property of the estate, and knowingly and fraudulently failed to inform the trustee of such property, or failed to deliver the property to the trustee.[33]  Based upon the findings set forth above, the Court concludes that Cinocca failed to establish any of the requisite elements of the claim.  Cinocca did not identify any property of the estate that was acquired by Purdy post-petition and concealed from the trustee.  Purdy's only post-petition income was his salary from Community First Bank, which was not property of the estate.  Accordingly, Purdy is entitled to judgment in his favor on the § 727(d)(2) claim.

## VI. Conclusion

For the reasons stated above, judgment shall be entered in favor of Purdy on all claims.

*[signature]*
DANA L. RASURE
UNITED STATES BANKRUPTCY JUDGE

---

[33]Section 727(d)(2) applies to property of the estate *acquired* by a debtor *post-petition*.  See, e.g., Johnson v. Chester Housing Authority (In re Johnson), 250 B.R. 521, 527 (Bankr. E.D. Pa. 2000), *citing* 6 COLLIER ON BANKRUPTCY, ¶ 727.15[4], at 727-71 (15th ed. rev. 1999), currently at ¶ 727.17[4], at 727-77 to 727-78 (16th ed. rev. 2010).  Examples of such property include refunds of pre-petition overpayments of taxes, and proceeds from pre-petition assets, such as stock dividends or payments resulting from prepetition insurance or personal injury claims.  Debtors also may acquire certain property within 180 days after the petition date that becomes property of the estate under 11 U.S.C. § 541(a)(5), including inheritances, spousal property settlements, and proceeds of life insurance policies.  Discharge may be revoked if a debtor fails to report the acquisition of these assets and/or fails to turn them over to the trustee.